UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20131-CR-ALTMAN

**UNITED STATES**,

    *Plaintiff*,

v.

**HECTOR ACOSTA,**

    *Defendant*.

_____/

## ORDER

Before the Hon. Roy K. Altman:

For the crime of defrauding Blue Cross Blue Shield out of hundreds of thousands of dollars, this Court sentenced Hector Acosta to 33 months in prison. After serving only seven of those months, Acosta filed this Motion, in which he asks the Court to give him home detention.[1]

But this Court doesn't have the power to compel the Bureau of Prisons (the "BOP") to transfer Acosta to home detention. And, even if Acosta's Motion could be construed as a request for a sentencing *reduction*, Acosta has not carried his burden of showing either (1) that his case presents "extraordinary and compelling" circumstances or (2) that he's no longer a danger to the community. His Motion is therefore **DENIED**.

## THE FACTS

The Defendant, Hector Acosta ("Acosta"), is 42 years old. *See* Response at 12. In 2019, he pled guilty to one count of conspiracy to commit healthcare fraud; in exchange, the Government

---

[1] This Motion is now ripe. *See* Motion to Modify Sentence (the "Motion") [ECF No. 148]; Response to Motion to Modify Sentence (the "Response") [ECF No. 153]; Reply to Response to Motion to Modify Sentence (the "Reply") [ECF No. 157].

agreed to dismiss the remaining seven (substantive) counts of healthcare fraud. *See* Indictment [ECF No. 1] at 6; Plea Agreement [ECF No. 68].

In the factual proffer he submitted at his guilty plea, Acosta admitted that, between November 2016 and February 2019, he and his co-conspirators submitted false and fraudulent claims to Blue Cross Blue Shield. *See* Factual Proffer [ECF No. 69] at 1. Acosta's role, as President of Florida Management & Administration, was to submit claims either for medically unnecessary tests or else for tests that were never performed at all. *Id*. In total, Acosta admitted that the conspiracy's fraudulent billings totaled at least $700,000. *Id.*

After calculating Acosta's advisory Guidelines range and considering the § 3553 factors, this Court sentenced him to 33 months in prison, to be followed by 24 months of supervised release. *See* Judgment [ECF No. 110]. The Court also ordered Acosta to pay $737,006 in restitution. *Id.*

As of this writing, Acosta has served about one-third of his sentence. *See* Response at 2. His current release date is March 3, 2022—though it could be earlier if he's transferred to a halfway house. *See* Mot. at 2.

## ANALYSIS

### I.   Home Confinement

Acosta does not seek a reduction in his sentence; he requests only "an order modifying his sentence to home detention." *Id*. at 1. The Government opposes this request and argues that "[o]nce a sentence is imposed, BOP alone is responsible for determining an inmate's place of incarceration." Response at 5.

The Government is right when it says that this Court cannot tell the BOP where to house its inmates. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("A sentencing court

2

can *recommend* that the BOP place an offender in a particular facility or program. *See* § 3582(a). But decisionmaking authority rests with the BOP."); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). And home detention is still a form of "incarceration." *United States v. Springer*, ____ F. App'x ____, 2020 WL 3989451, at *2 (10th Cir. July 15, 2020); *see also id.* ("Springer was transferred to home confinement under the recently enacted CARES Act due to the COVID-19 pandemic. Springer's transfer to home confinement is not a release from imprisonment, nor does this transfer reduce the length of his custodial sentence."); *United States v. Ko*, 739 F.3d 558, 561 (10th Cir. 2014) ("Section 3624(c) makes clear that, even though a prisoner is . . . in home confinement, he is still serving a 'term of imprisonment.' When read together, these statutes plainly indicate that a person is in the BOP's 'custody' while serving the remainder of a sentence in home confinement." (internal citations omitted)).

While the Eleventh Circuit has not said whether courts may order home confinement under § 3582(c)(1)—the compassionate release provision at issue here—its analysis of the closely-related § 3582(c)(2) is instructive. Like our § 3582(c)(1), § 3582(c)(2) allows an inmate to petition for a reduced sentence *only* after the U.S. Sentencing Commission has lowered the Guidelines range under which that inmate was sentenced. *See* 18 U.S.C. § 3582(c)(2) ("In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."). And, in the context of § 3582(c)(2), the

Eleventh Circuit has made clear that district courts *may not* intrude on the BOP's core sphere of expertise by directing an inmate to home confinement. *See United States v. Anderson*, 517 F. App'x 772, 775 (11th Cir. 2013) ("[T]o the extent that Anderson requested that the district court order the BOP to place him in home confinement, that request is outside the scope of § 3582(c)(2). The BOP, not the district court, retained authority to choose the place of Anderson's incarceration.").

Notably, the only federal appellate court to consider this issue under the provision at issue here (§ 3582(c)(1)) has held—consistent with the Eleventh Circuit's approach in *Anderson*—that "the authority to grant home confinement remains solely with the Attorney General and the BOP." *United States v. Brummett*, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020). And many district courts in this Circuit agree. *See United States v. Bonilla Mesa*, 2020 WL 4757335, at *7 (S.D. Fla. July 17, 2020) ("Defendant asks, in the alternative, that the Court place him on home confinement for the remainder of his sentence. The Court has no authority to order this relief."); *United States v. Israel*, 2020 WL 3893987, at *9 (S.D. Fla. July 10, 2020) ("First, to the extent that Defendant seeks release to home confinement, the Court is without authority to grant the requested relief."); *United States v. Christian*, 2020 WL 5518616, at *1 (S.D. Ga. Sept. 14, 2020) ("This Court lacks the authority to order the BOP to release a prisoner on home confinement."); *United States v. Hester*, 2020 WL 5535010, at *1 n.1 (M.D. Ala. Sept. 15, 2020) ("To the extent that Hester seeks release to home confinement pursuant to the CARES Act due to the COVID-19 pandemic (doc. 66 at 10), the Court has no authority to order the Bureau of Prisons to change the Defendant's current place of incarceration."); *United States v. Brantly*, 2020 WL 5514571, at *1 (M.D. Fla. Sept. 14, 2020) ("However, the Court has no authority to direct the Bureau of Prisons (BOP) to place Brantley in home confinement because such decisions are committed solely to the

BOP's discretion."). This Court, in short, does not have the authority to grant Acosta the relief he seeks.

Of course, this discussion is, in some respects, academic because the Court could achieve the same result by simply reducing Acosta's sentence to time served and then "impos[ing] a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home." *United States v. Spencer*, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020); *Israel*, 2020 WL 3893987, at *9 ("Although the Court does not have the authority to order a prisoner's release to home confinement, the Court does have the authority to reduce a defendant's sentence to time-served, impose a term of supervised release, and order home confinement as a condition of supervised release."). To do this, though, the Court would have to conclude that Acosta has carried his burden of showing that he's entitled to that reduction—which, for the reasons set out below, he fails to do.

**II.   Sentence Reduction**

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other

5

person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* The Court will discuss each of these four steps in turn.

### A. Exhaustion of Administrative Rights to Appeal

Acosta asserts that he exhausted his administrative remedies when the Warden failed to respond to his request within 30 days of receiving it. *See* Mot. at 7; *see also* April 17, 2020 Letter to Warden [ECF No. 148-1]. The Government does not challenge this assertion—and, in any event, the combination of Acosta's Letter and the Warden's silence satisfy the exhaustion requirement. Acosta's Motion is therefore timely.

### B. 18 U.S.C. § 3553

After considering the relevant § 3553 factors, this Court sentenced Acosta to 33 months in prison. *See* Judgment. Acosta did not appeal, and the time to do so has passed. Acosta does not challenge this Court's application of the § 3553 factors. *See* Mot. Thus, to the extent they are applicable, those § 3553 factors counsel against a reduction here.

### C. 18 U.S.C. § 3582

District Courts have "no inherent authority" to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's

> behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

18 U.S.C. § 3582(c)(1).

Because Acosta is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons" test in § 3582(c)(1)(A)(i). But Section 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). And the Commission has helpfully defined the contours of the test as follows:

> 1. **Extraordinary and Compelling Reasons.**--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant.**

>(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>(ii) The defendant is
>
>>(I) suffering from a serious physical or medical condition,
>>
>>(II) suffering from a serious functional or cognitive impairment, or
>>
>>(III) experiencing deteriorating physical or mental health because of the aging process,
>>
>>that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt n.1.

The reference to "subdivision (2)" requires the Defendant to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

>**(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
>(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

8

>(2) the weight of the evidence against the person;
>
>(3) the history and characteristics of the person, including—
>
>>(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>>(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

The Defendant bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

As a preliminary matter, Acosta cannot satisfy the "Age of the Defendant" test: He is 42 years old, not 65; he has not alleged any age-related decline; and he has served neither 10 years nor 75% of his overall sentence. His request for relief, then, hinges on his ability to meet either of the two elements of the "Medical Condition of the Defendant" test. The first element requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). The second

9

requires him to establish that he suffers from any of three conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii).

Acosta claims to suffer from high blood pressure and an enlarged heart—two conditions that, he says, would exacerbate any COVID-19 infection. *See* Mot. at 3–4. Although the Government admits that Acosta has high blood pressure, it insists that this condition is being managed with medication. *See* Response at 13. And, in support of the Government's separate position that Acosta doesn't have an enlarged heart, it has submitted a radiologist's report, which found that his "cardiac silhouette is normal." *Id.* Acosta never contradicts either of these assertions. *See generally* Reply.

But, even with hypertension, Acosta has not shown that his case presents the kind of "extraordinary and compelling" circumstances that might justify the remedy he seeks. To begin with, Acosta never alleges that his (medically-controlled) hypertension (1) constitutes a "serious physical or medical condition," (2) qualifies as "a serious functional or cognitive impairment," or (3) indicates a "deteriorating physical or mental health because of the aging process," as required by U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii). *See generally* Mot. Nor does Acosta contend that hypertension qualifies as a "terminal" illness under U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). *See id.*

The Court acknowledges that the spread of COVID-19 has been pervasive and devastating. It has challenged our institutions, undermined Americans' ability to maintain their economic security, and altered the way people interact. More fundamentally, it goes without saying, the pandemic has resulted in widespread suffering. In the United States alone, more than 8,100,000 people have tested positive for the disease, and over 210,000 Americans have died from it. *See*

10

*CDC COVID Data Tracker.*, CDC (Oct. 1, 2020), available at https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last accessed Oct. 20, 2020).

And, while "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release," *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020), the CDC has recognized that hypertension "might" put people "at increased risk of a severe illness," CDC *People at Increased Risk: People with Certain Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Oct. 20, 2020). It is therefore conceivable that Acosta could suffer a "serious physical . . . condition" *if* he were to contract COVID-19. But, even considering Acosta's enhanced susceptibility to COVID-19, for three reasons, Acosta's hypertension does not constitute the kind of "extraordinary and compelling reason" that would justify the reduction he asks for.

*First*, Acosta provides no evidence that hypertension increases his risk of *contracting* COVID-19. Instead, he says only that "[i]t [is] impossible to know if inmates at FCI Miami are being tested, quarantined, or how severe the outbreak is at that facility." Mot. at 5. While that may have been true when the Motion was submitted, as of this writing—some four months later—FCI Miami (where Acosta is housed) is reporting only *seven* active COVID-19 cases. *See* Bureau of Prisons COVID-19 Cases, available at https://www.bop.gov/coronavirus/ (last accessed Oct. 20, 2020). In this respect, Acosta does not acknowledge, much less respond to, the Government's argument that the BOP has taken, and will continue to take, drastic measures to make FCI Miami as safe as possible in the circumstances. These include "requir[ing] that all inmates in every BOP institution be secured in their assigned cells/quarters, in order to stop any spread of the disease" and allowing "[o]nly limited group gathering" with "attention to social distancing to the extent

11

possible, to facilitate commissary, laundry, showers, telephone, and computer access." Response at 9. The BOP has also "severely limited the movement of inmates and detainees among its facilities" and cancelled "all official staff travel" and "most staff training." *Id*. at 9.

Most importantly, the Government says that, under current BOP protocols, "[a]ll staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved." *Id.* at 10. Moreover, all new inmates are screened for COVID-19 symptoms. *Id*. In addition, "[a]symptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff," and "[s]ymptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation." *Id.* Acosta never mentions these protocols and thus never explains why these measures are unlikely to protect him. *See generally* Reply. Either way, as we have seen, these measures have resulted in very few inmates at FCI Miami contracting COVID-19.

*Second*, even if he *were* to contract COVID-19, Acosta does not dispute that he is—and for some time has been—taking medications that have brought his hypertension under control. *See* Response at 13. And Acosta never suggests that his *controlled* hypertension somehow exposes him to a greater risk of serious illness or death than that faced by the average inmate.

*Third*, Acosta does not allege that his health conditions are significantly deteriorating, and "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberthard*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020). The Court sees no reason to depart from the BOP's well-reasoned view on this question.

Because Acosta has not shown that his circumstances are "compelling" or "extraordinary," his Motion must be **DENIED**.

### D.  18 U.S.C. § 3142

Even if Acosta had shown "extraordinary and compelling" circumstances, his Motion would still be denied because he has failed to establish that he no longer poses a danger to his community. As the relevant Sentencing Guidelines provision makes clear, the "extraordinary and compelling reasons" test only applies if "the defendant meets the requirements of subdivision (2)"—that is, only if the Defendant demonstrates that he no longer poses a threat to society, as defined by 18 U.S.C. § 3142.

Acosta has not even attempted to show that he represents no such danger. *See generally* Mot. (failing to argue any of the § 3142 factors). And it was indisputably his burden to do so. *See Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). This omission is fatal to his claim.

\*\*\*

The Court, therefore, **ORDERS and ADJUDGES** as follows:

1. The Defendant's Motion for Reduction in Sentence [ECF No. 148] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 20th day of October 2020.

_____
**ROY K. ALTMAN
UNITED STATES DISTRICT JUDGE**

cc:   counsel of record